BARBARA ANTONUCCI (SBN 209039)
bantonucci@constangy.com
STACY LALL (SBN 271485)
slall@constangy.com
DONGYING ZHANG (SBN 352944)
dzhang@constangy.com
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
601 Montgomery Street, Suite 350
San Francisco, CA 94111
Telephone: (415) 918-3000

KENNETH D. SULZER (SBN 120253)
ksulzer@constangy.com
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
2029 Century Park East, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 909-7775

Attorneys for Defendant
THORNTONS LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ALEXANDER MONTES, individually, and on behalf of other members of the general public similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>THORNTONS LLC, a Delaware Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**<br><br>(Santa Clara Superior Court Case No. 25CV462168)<br><br>Complaint Filed: March 26, 2025<br>Trial Date: Not Set |

# TABLE OF CONTENTS

**PROCEDURAL HISTORY** .......... 3
**TIMING** .......... 3
**CAFA JURISDICTION** .......... 4
**VENUE** .......... 16
**SERVICE ON SUPERIOR COURT** .......... 17

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Thorntons LLC ("Defendant" or "Thorntons") hereby removes the above-titled action from the Superior Court of the State of California for the County of Santa Clara to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, asserting original federal jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). In support of such removal, Defendant states as follows:

**PROCEDURAL HISTORY**

1. On March 26, 2025, Plaintiff Alexander Montes ("Plaintiff Montes") commenced an action against Thorntons by filing a Complaint in the Superior Court of California for the County of Santa Clara asserting, on behalf of a putative class consisting of all individuals who have been employed by Thorntons in California since March 26, 2021 and classified as non-exempt, ten causes of action for (1) violation of California Code §§ 510 and 1198 (unpaid overtime), (2) violation of California Labor Code §§ 226.7 and 512(a) (unpaid meal premiums), (3) violation of California Labor Code § 226.7 (unpaid rest period premiums), (4) violation of California Labor Code §§ 1194, 1197, 1197.1 (unpaid minimum wages), (5) violation of California Labor Code §§ 201 and 202 (final wages not timely paid, (6) violation of California Labor Code § 204 (wages not timely paid during employment), (7) violation of California Labor Code § 226(a) (non-compliant wage statements), (8) violation of California Labor Code § 1174(d) (failure to keep requisite payroll records), (9) violation of California Labor Code §§ 2800 and 2802 (unreimbursed business expenses), and (10) violation of California Labor Code §§ 17200, et seq. (Declaration of Barbara I. Antonucci ("Antonucci Decl."), Ex. A ("Complaint").) The state court case is pending before Judge Charles F. Adams. (*Id.*, ¶ 2.) A copy of the Complaint was served on Thorntons on April 16, 2025. (*Id.*)

**TIMING**

2. While a lawsuit generally must be removed within 30 days of the filing of the Complaint, "if the case *stated* by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended

pleading, motion, order or other paper *from which it may first be ascertained that the case is one which is or has become removable*." 28 U.S.C. § 1446(b)(3) (emphasis added).

3. Here, the Complaint did not allege an estimated number of putative class members, or other facts from which it can be ascertained from the face of the pleadings that the case is one which is removable. (*See generally*, Complaint) Instead, Thorntons has conducted its own investigation and review of its employment and payroll records. (Declaration of Kenny Cain ("Cain Decl.") ¶¶ 5-9.) Based on this review, this action is properly removable under the Class Action Fairness Act because the statute's diversity, numerosity, and amount in controversy requirements are met. Accordingly, this removal is appropriate and timely under 28 U.S.C. § 1446(b). *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) ("We conclude that §§ 1441 and 1446, read together, permit a defendant to remove [a CAFA action] . . . on the basis of its own information . . . A defendant should not be able to ignore pleadings or other documents from which removability may be ascertained . . . [b]ut neither should a plaintiff be able to prevent or delay removal by failing to reveal information showing removability and then objecting to removal when the defendant has discovered that information on its own.")

**CAFA JURISDICTION**

4. This Court has original jurisdiction over this action under the Class Action Fairness Act ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d), because this action is a class action in which at least one class member is a citizen of a state different from that of the Defendant, the number of class members is greater than 100, and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2)(A), (d)(5)(B), and (d)(6). As set forth below, these diversity, numerosity, and amount in controversy prerequisites are met here, and this action is therefore properly removable pursuant to 28 U.S.C. § 1441(a).

5. **Diversity.** Under CAFA, complete diversity is not required; 'minimal diversity' suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007). CAFA's minimal diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), 1453(b). In a class action, only the

citizenship of the named parties is considered for diversity purposes, and not the citizenship of the class members. *Snyder v. Harris*, 394 U.S. 332, 340 (1969). Diversity of citizenship exists here because Plaintiff and Defendant are citizens of different states.

6. Plaintiff Montes was employed by Thorntons as a Guest Service Representative at Thornton's Milpitas station located in Milpitas, California. (Cain Decl. ¶ 3.) Defendant Thorntons' company records indicate that, throughout his employment with Thorntons, Plaintiff Montes resided in San Jose, California. (*Id.* at ¶ 4.) On his job application, Plaintiff Montes represented that he lived in San Jose, California. (*Id.*) Throughout his employment, Plaintiff was issued wage statements to his San Jose, California address. (*Id.*) At no time during or after his employment did Thorntons ever receive any change of address notice from Plaintiff Montes. (*Id.*) In his Complaint in this action, filed on March 26, 2025, Plaintiff allege that he "is an individual residing in the State of California, County of Santa Clara." (Compl. ¶5.) Given that Plaintiff Montes represented that the same address in San Jose, California was his residence throughout her employment and indicated that his residence remained in California at the time he filed both the Complaint, Plaintiff Montes has demonstrated that he resides and intends to remain in California. (*Id.*) Thus, Plaintiff Montes is a citizen of California.

7. Defendant Thorntons was, at the time of the filing of this action, and still is, a limited liability company organized under the laws of the State of Delaware. (Cain Decl., ¶ 2.) For purposes of CAFA's minimal diversity requirement, an "unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); *see Abrego v. The Dow Chemical Co*., 443 F.3d 676, 684 (9th Cir. 2006); *see also Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1032 fn.13 (9th Cir. 2009) (A. Kleinfeld, *concurring*) ("For qualifying class actions such as this one, CAFA… looks [for LLCs]… to the State where it has its principal place of business and the State under whose laws it is organized."); *Lipp v. Carvin Software, LLC*, 2023 WL 4681612, at *1 (C.D. Cal. May 18, 2023), *citing Jack v. Ring LLC*, 553 F. Supp. 3d 711, 714-16 (N.D. Cal. 2021) (in CAFA actions, an LLC's citizenship is determined by its principal place of business and state of organization). Here, Defendant Thorntons maintains headquarters in Louisville, Kentucky, with its officers and directors, including the chief executive

officer, chief financial officer, and many other executive officers and employees, working and directing the operations of Thorntons from the corporate headquarters located in Kentucky. (Cain Decl., ¶ 2.) Therefore, Defendant Thorntons is a citizen of the State of Delaware and the State of Kentucky.

8. The Complaint also names as defendants "Does 1 through 100." (Compl. ¶ 9.) Does 1 to 100 are fictitious defendants who are not parties to this action, are not required to join in a removal petition, and must be disregarded for removal purposes. *See* 28 U.S.C. §§ 1441(a) and 1447(e); *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes").

9. Because Defendant is a citizen of different states than Plaintiff, CAFA's minimal diversity requirement is satisfied. 28 U.S.C. § 1332(d)(2)(A).

10. **Not Governmental Entities.** Under 28 U.S.C. § 1332(d)(5)(A), CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief." Defendant is a business operation, not state, state official, or other government entity exempt from CAFA. (Cain Decl., ¶ 2.)

11. **Numerosity.** Plaintiff purports to bring the causes of action alleged in the Complaint on behalf of a class consisting of "all current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years proceeding the filing of this Complaint to final judgment and who reside in California (the "Class Members")." (Compl. ¶ 13.)

12. CAFA jurisdiction does not attach where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5)(B). The Complaint alleges that "the class is estimated to be greater than fifty (50) individuals" (Compl. ¶ 15.a.) Thorntons' records show that approximately 1,083 full-time putative class members worked for Thorntons in California from the beginning of the putative class period, March 26, 2021 to June 20, 2025, just prior to the filing of this removal notice. (Cain Decl., ¶ 5.) Accordingly, CAFA's numerosity requirement is met.

13. **Amount in Controversy.** The claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000,

exclusive of interest or costs. 28 U.S.C. § 1332(d)(6). Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42. Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class action in state or federal court should be resolved in favor of federal jurisdiction. *Id.* ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendants.") Because there is a presumption in favor or removal, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

14. Where a statutory maximum is specified, courts may consider the *maximum* statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met. *Coleman v. Estes Express Lines Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *citing Korn v. Polo Ralph Lauren, Inc.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000).

15. Plaintiff alleges ten causes of action in the Complaint, including: (1) violation of California Labor Code §§ 510 and 1198 (Compl. ¶¶ 53-61), (2) violation of California Labor Code §§ 226.7 and 512(a) (Compl. ¶¶ 62-72), (3) violation of California Labor Code § 226.7 (Compl. ¶¶ 73-81), (4) violation of California Labor Code §§ 1194, 1197, and 1197.1 (Compl. ¶¶ 82-87), (5) violation of California Labor Code §§ 201 and 202 (Comp. ¶¶ 88-93), (6) (Violation of California Labor Code § 204 (Compl. ¶¶ 94-99) (7) (Violation of California Labor Code § 226(a) (Compl. ¶¶ 100-106), (8) Violation of California Labor Code § 1174(d) (Compl. ¶¶ 107-111), (9) Violation of California

Labor Code §§ 2800 and 2802 (Compl. ¶¶ 112-116), and (10) Violation of California Business & Professions Code §§ 17200, et seq. (Compl. ¶¶ 117-123). Plaintiff seeks, among other things, compensatory, consequential, general, and special damages, penalties, unpaid balance of compensations, unreimbursed business expenses, interest, restitution of all money and/or property, attorneys' fees, and costs. (*Id*., pp. 23-28 ("Prayer for Relief").)

16. Thorntons denies the validity and merit of the entirety of Plaintiff's alleged claims, the legal theories upon which they are ostensibly based, and the alleged claims for monetary and other relief that flow therefrom. Thorntons denies that Plaintiff is entitled to take anything by way of the Complaint, either on his own behalf or on behalf of the putative class. For purposes of removal only, however, and without conceding that Plaintiff or the putative class are entitled to relief, the Court must presume that Plaintiff will prevail on their claims, for purposes of determining whether the minimum amount in controversy has been satisfied. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability. In that sense, the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover. An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be less than the requisite amount . . .") The amount in controversy is dictated by the extent of Plaintiff's claims, not their merits. *See Roth v. Comerica Bank.*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010) ("The ultimate inquiry is what amount is 'put in controversy' by the plaintiff's complaint, not what a defendant will actually owe." (*quoting Korn*, 536 F. Supp. 2d at 1205)).

17. The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. §1446(a). The United States Supreme Court in *Dart* recognized that "as specified in section 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." 574 U.S. at 89. Only if the plaintiff contests or the court questions the allegations of the notice of removal is supporting evidence required. *Id*. Otherwise, the defendant's amount in controversy allegation should be accepted, just as plaintiff's amount in controversy

allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id*. at 87. "[N]o antiremoval presumption attends cases invoking CAFA." *Id*. at 89. Here, Plaintiff do not allege the amount in controversy. When the Plaintiff's Complaint does not state the amount in controversy, the Defendant's notice of removal may do so. The notice of removal must simply include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart* at 89.

> In the Ninth Circuit, when a complaint does not state a specific damages figure (which Plaintiffs' Complaint does not), a removing party must show by a preponderance of the evidence that the amount in controversy exceeds CAFA's jurisdictional minimum. At the time of removal, the notice of removal need not contain evidentiary submissions. Instead, the notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Such an allegation should be accepted when not contested by the plaintiff or questioned by the court. However, evidence establishing the amount is required by [28 U.S.C.] § 1446(c)(2)(B) . . . when the plaintiff contests, or the court questions, the defendant's allegation. The removing party may satisfy its evidentiary burden by submitting affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal. The party may buttress this evidence by relying on a chain of reasoning that includes reasonable assumptions, including those based on the allegations in the complaint. In these circumstances, the removing party must show the amount in controversy by a preponderance of the evidence.

*Doe v. Trinity Health Corp.*, No. 121CV00994JLTEPG, 2022 WL 884977, at *2–3 (E.D. Cal. Mar. 25, 2022) (internal citations and quotations omitted)).

18. Plaintiff seeks to recover damages and penalties for unpaid wages and overtime, including missed meal periods and rest break premium wages, as well as inaccurate wage statements and penalties for waiting time penalties, unreimbursed business expenses, and penalties for failure to maintain accurate employment records (Compl., Prayer for Relief.) Although Thorntons denies all liability, a review of Thorntons' employment and payroll records shows that the alleged amount in controversy herein exceeds $5,000,000 in the aggregate based on the allegations contained in the Complaint. As described below, the amount in controversy in this lawsuit is approximately **$13,923,715.00**—over the jurisdictional minimum.

19. **The Putative Class.** Thorntons' records indicate that since it began its California operations on April 1, 2024, Thorntons employed approximately 1,083 non-exempt full-time employees in California. (Cain Decl., ¶ 5.) These non-exempt employees worked approximately 34,497 workweeks between April 1, 2025 and June 20, 2025 (i.e., through the approximate date of the filing of

this removal notice). (*Id.*) Thornton denies liability for any and all alleged violations that occurred prior to the time it began operating in California.

20. Based on the data from April 1, 2024 to June 20, 2025, approximately 474 of Thorntons' former non-exempt full-time employees in California ended their employment with Thorntons. (Cain Decl., ¶ 6.)[1]

21. Based on the data from April 1, 2024 to June 20, 2025, approximately 474 of Thorntons' former non-exempt full-time employees in California ended their employment with Thorntons. (*Id.*, ¶ 6.)

22. Thorntons employed approximately 1,083 non-exempt full-time employees in California between April 1, 2024 and June 20, 2025. (Cain Decl., ¶ 7.) During this period, these employees worked approximately 34,497 workweeks, approximately 34,497 pay periods, and received a corresponding number of wage statements. (*Id.*) Thorntons' non-exempt employees in California are paid weekly. (*Id.*)

23. Though work schedules vary from facility to facility and from week to week, during this timeframe, regular work shifts of Thorntons' full-time non-exempt employees in California are generally at least eight hours a shift and full-time employees are generally scheduled to work five days a week. (*Id.*, ¶ 8; *accord* Compl., ¶ 24 ("Plaintiff and the other class members worked over eight (8) hours in a day, and/or forty (40) hours in a week during their employment with Defendants.").)

24. Though work schedules vary from facility to facility and from week to week, during this timeframe, regular work shifts of Thorntons' full-time non-exempt employees in California are generally at least eight hours and full-time employees are generally scheduled to work five days a week. (Cain Decl., at ¶ 8.)

25. The hourly rate of pay received by Thorntons' non-exempt full-time employees in California varies from $17.00 per hour to $34.00 per hour. However, approximately 78% of Thorntons' non-exempt full-time employees in California received an hourly rate of pay greater or equal to $18.50

[1] Defendant denies that liability extends prior to April 1, 2024; however, if Plaintiff so alleges, the amount in controversy would multiply over the additional years and undeniably exceed $5 million.

per hour. Averaging this group of employees' annual rates of pay, Thorntons estimates, approximately, an average straight-time rate of about $20.00. (Cain Decl., ¶ 9.)

26. **<u>Meal Period Violations</u>.** The Complain alleges that "Defendants engaged in a **<u>pattern and practice</u>** of wage abuse against their hourly-paid or non-exempt employees within the State of California. This **<u>pattern and practice</u>** involved, inter alia, failing to pay them for all regular and/or overtime wages earned and for missed meal periods and rest breaks in violation of California law." (Compl. ¶ 25.) Plaintiff generally alleges that Defendant "failed to provide Plaintiff and the other class members all required rest and meal periods during the relevant time period as required…" and that Defendant "intentionally and willfully required Plaintiff and other class members to work during meal periods and failed to compensate Plaintiff and other class member the full meal period premium for work performed during meal periods." (Compl. ¶¶ 28, 69.) Plaintiff alleges that Defendant has a "pattern and practice" which involved "failing to pay [Plaintiff and putative class members] for missed meal periods . . . in violation of California law." (Compl. ¶25.)

27. Claims for meal period violations are subject to the three-year statute of limitations in Code of Civil Procedure § 338(a). *Murphy v. Kenneth Cole Prod.'s, Inc.*, 40 Cal. 4th 1094, 1102-14 (2007). However, Plaintiff additionally seeks meal period premium pay pursuant to Business & Professions Code §§ 17200, et seq. (Compl. ¶¶ 120), the statute of limitations on which is four years. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178-79 (Cal. 2000) ("We recognize that any business act or practice that violates the Labor Code through failure to pay wages is, by definition . . . an unfair business practice . . . *Any* action on *any* UCL cause of action is subject to the four-year period of limitations created by that section." (emphasis in original)). Employees that are not provided with a compliant, duty-free meal period are entitled to one additional hour's pay at their regular rate of pay for each workday that a meal period is not provided. Cal. Labor Code § 226.7(c).

28. Plaintiff's "pattern and practice" allegations and his universal failure-to-pay theory could implicate a meal period violation for *every single shift* worked by a putative class member during the class period under *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040 (2016) (holding that employers are obligated to "relinquish[] control over their [employees'] activities" during

their meal periods.") However, in order to provide a conservative estimate for this removal, Thorntons assumes that putative class members missed or otherwise received, on average, two noncompliant meal periods per workweek. Using an average straight-time rate of $20.00/hour, the amount in controversy as to this claim is **$1,379,880.00** (34,497 workweeks x 2 violations/workweek x $20.00/violation).

29. **Rest Period Violations.** Plaintiff similarly alleges that "Defendants required Plaintiff and other class members to remain on Defendants' premises during purported rest periods, thereby failing to relieve them of all employer control," that "Defendants failed to provide all requisite uninterrupted meal and rest periods to Plaintiff and the other class members, and that "Defendants willfully required Plaintiff and the other class members to work during rest periods and failed to pay Plaintiff and the other class members the full rest period premium for work performed during rest periods. (Compl. ¶ 32, 42, 44, 78.) In addition, Plaintiff alleges that Defendant has a "pattern and practice" which involved "failing to pay [Plaintiff and putative class members] for missed . . . rest breaks in violation of California law." (Compl. ¶25.)

30. Claims for rest period violations are subject to the three-year statute of limitations in Code of Civil Procedure § 338(a). *Murphy*, 40 Cal. 4th at 1102-14. However, Plaintiff seeks rest period premium pay pursuant to Business & Professions Code §§ 17200, et seq. (*Id*., ¶¶ 123-127), the statute of limitations on which is four years. *Cortez*, 23 Cal. 4th at 178-79. As with meal period violations, employees that are not authorized and permitted to take a compliant, duty-free rest period are entitled to one additional hour of pay at their regular rate of pay for each workday that one or more rest periods are not authorized or permitted. Cal. Labor Code § 226.7(c).

31. Plaintiff's allegations that Defendant's "pattern and practice" (Compl. ¶ 25) was to not to pay for missed rest periods and that Defendants "fail[] to relieve [employees] of all employer control" by allegedly requiring them to "remain on Defendants' premises during purported rest periods" (Compl. ¶ 32) implicates at least one to two potential rest period violations during every single shift worked, under *Augustus v. ABM Security Servs. Inc*., 2 Cal.5th 257, 269 (2016) (extending *Brinker's* holding that an employer must "relinquish control over how employees spend their time" to rest periods.) For the purposes of this removal, Thorntons conservatively estimates that putative class

members were, on average, not authorized or permitted to take two rest periods per workweek for each of the approximately 34,497 workweeks. Thus, the amount in controversy as to this claim would be at least **$1,379,880.00** (34,497 workweeks x 2 violations/workweek x $20.00/violation).

32. **Unpaid Wages.** Plaintiff seeks unpaid minimum wages and overtime wages pursuant to Labor Code §§ 510, 1194, 1198 and IWC Wage Orders. (Compl. ¶¶ 53-61.) These violations are predicated on, among other things, Plaintiff alleged "[t]his pattern and practice involved [] failing to pay [] for all regular and/or overtime wages earned," and that Defendant "intentionally and willfully failed to pay overtime wages owed to Plaintiff and the other class members." (Compl. ¶¶ 25, 59.)

33. Plaintiff alleges that Thorntons failed to pay overtime wages to Plaintiff and other class members for all hours worked and that Plaintiff and other class members were required to work more than eight (8) hours per day and/or forty (40) hours per week without overtime compensation. (Compl. ¶¶ 24-25, 40.) Thorntons assumes for the purposes of this removal that, to calculate potential exposure for Plaintiff's overtime claim, Plaintiff and other putative class members seek payment for an average of 2 hours of overtime at time-and-a-half every workweek during the estimated class period figure of 34,497 workweeks. Accordingly, the amount in controversy as to Plaintiff's overtime wage claim is **$2,069,820.00** (34,497 workweeks x 2 hours/workweek x $30.00/hour overtime rate [1.5 x $20.00/hour])[2].

34. Thorntons assumes for the purposes of this removal that, to calculate potential exposure for Plaintiff's claim for liquidated damages on minimum wages, Plaintiff and other putative class members seek payment of liquidated damages for an average of 2 hours of unpaid work at a minimum wage of $16.00 per hour (the California minimum wage in 2024) every workweek during the estimated class period figure of 34,497 workweeks. Accordingly, the amount in controversy as to Plaintiff's minimum wage claim is **$1,103,904.00** (34,497 workweeks x 2 hours/workweek x $16.00/hour minimum wage rate for liquidated damages).

35. **Waiting Time Penalties.** Plaintiff also seeks statutory waiting time penalties pursuant to Labor Code §§ 201-203 because Thorntons allegedly failed to pay all wages owed to putative class

[2] This amount encompasses the amount of the minimum wage claim, which would be $1,103,904 (34,497 workweeks x 2 hours/workweek x $16.00 hour minimum wage rate).

members upon discharge or resignation (Compl., ¶¶ 34, 46, 90-93.) This claim is derivative of their underlying claims for failure to pay minimum and overtime wages and meal and rest period premiums during employment. *Id*. Under Section 203, terminated employees who are not paid all wages owed at the time of separation from employment may recover a penalty that is equal to their daily wage up to a maximum of thirty (30) days. Cal. Labor Code § 203(a). The statute of limitations for a claim for waiting time penalties is three years. Cal. Labor Code § 203(b); *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389 (2010).

36. As set forth in paragraph 20, Thorntons' records show that approximately 474 of Thorntons' non-exempt full-time employees in California ended their employment with Thorntons between April 1, 2024 and June 16, 2025. Assuming that these non-exempt full-time employees worked, on average, 8 hours per day, the total amount in controversy for this claim would be **$2,275,200.00** (474 former employees x $20.00/hour x 8 hours/day x 30 days).

37. **Wage Statement Violations.** Plaintiff seeks statutory penalties for Thorntons' alleged failure to provide accurate wage statements in violation of Labor Code § 226. (Compl., ¶¶ 100-106.) Specifically, Plaintiff alleges—without limitation—that Thorntons "have intentionally and willfully failed to provide Plaintiff and the other class members with complete and accurate wage statements." (Compl. at ¶ 102.) Pursuant to Labor Code § 226(e), an injured employee is entitled to recover the greater of either actual damages *or* penalties equal to $50 for the initial pay period in which a violation occurs and $100 for each pay period during which a subsequent violation occurs (up to an aggregate penalty of $4,000) for a knowing and intentional violation. The statute of limitations for penalties for failure to provide accurate wage statements is one year. Cal. Code Civ. Proc. § 340(a).

38. Thorntons' records show between April 1, 2024 through the filing of this removal notice, Thorntons employed approximately 1,083 non-exempt employees in California. During this period, these employees worked approximately 34,497 pay periods and received a corresponding number of wage statements. Under Plaintiff's theory of the case, every one of these wage statements failed to comply with Labor Code § 226(a) and triggered a wage statement penalty under Labor Code § 226(e).) For the purpose of removal, Thorntons calculated one wage statement violation for each

putative class member for each pay period they worked between April 1, 2024 and the approximate date of filing of this removal notice, up to a cap of $4,000 per person. Based on the employment records for this period, the amount in controversy as to this claim is **$2,792,300.00** (capped at $4,000/employee).

39. **Unreimbursed Business Expenses.** Plaintiff alleges that Thorntons "have intentionally and willfully failed to reimburse Plaintiff and the other class members for all necessary business-related expenses and costs." (Compl., ¶¶ 50, 115.) Thorntons estimates, for the purpose of this removal, that this claim seeks approximately $5.00 per workweek per putative class member. Accordingly, Thorntons assumes for the purposes of this removal that the amount placed in controversy by this claim is **$172,485.00** (34,497 workweeks x $5.00).

40. **Attorneys' Fees.** Plaintiff requests attorneys' fees to the extent recoverable by statute, including 218.5, 226, 1194, 2802, and Code of Civil Procedure § 1021.5. (Compl., Prayer for Relief.) When a party seeks to recover attorneys' fees provided for by statute, these fees—including future fees—are included in the amount in controversy to reach CAFA's $5,000,000 minimum. *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("Because the law entitles [plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy [in a removal under CAFA]"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007). It is well-established in the Ninth Circuit that the benchmark for setting attorneys' fees in the class action context is 25% of the common fund. *See*, *e.g.*, *Vizcaino v. Mircrosoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015), *citing Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014); *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001).

41. Labor Code §§ 218.5, 226(e), and 1194.3 authorize the recovery of reasonable attorneys' fees in actions for the recovery of unpaid wages and inaccurate wage statements. Assuming that Plaintiff is able to recover *only* attorneys' fees equal to 25% of the amount recovered for her claims for unpaid meal period premium, unpaid rest period premium, unpaid wages, inaccurate wage statements,

and waiting time penalties (and excluding unreimbursed business expenses, and interest), the amount of attorneys' fees in controversy is potentially **<u>$2,750,246.00</u>** (($1,379,880.00 unpaid meal period premiums + $1,379,880.00 unpaid rest period premiums + $2,069,820.00 unpaid overtime wages + $1,103,904.00 liquidated damages + $2,275,200.00 waiting time penalties + $2,792,300.00 wage statement penalties) x 25%).

42. **<u>Total Amount in Controversy</u>.** Assuming that Thorntons' non-exempt full-time employees in California were owed an additional two hours of unpaid overtime per workweek, two meal period premiums per workweek, and two rest period premiums per workweek; that non-exempt employees that separated from employment with Thorntons were entitled to a penalty equal to 30 days' pay at 8 hours per day; that all wage statements provided to putative class members during the year prior to the filing of the Complaint failed to comply with Labor Code § 226(a); and that Plaintiff can recover attorneys' fees equal to 25% of the value of her claims for unpaid meal and rest period premiums, unpaid wages, wage statement penalties, waiting time penalties; *and excluding any potential amount in controversy* for Plaintiff's claims for unpaid minimum wages, and interest, costs, attorneys' fees for other claims, and any other duplicative penalties or requests for relief, the amount in controversy alleged in this lawsuit is at least **<u>$13,923,715.00</u>** ($1,379,880.00 unpaid meal period premiums + $1,379,880.00 unpaid rest period premiums + $2,069,820.00 unpaid overtime wages + $1,103,904.00 liquidated damages + $2,275,200.00 waiting time penalties + $2,792,300.00 wage statement penalties + $172,485.00 unreimbursed business expenses + $2,750,246.00 attorneys' fees)—over CAFA's $5,000,000 threshold.

## <u>VENUE</u>

43. Venue lies in this Court pursuant to 28 U.S.C. §§ 1441, 1446(a), and 84(c)(2). This action was originally brought in the Superior Court of the State of California, County of Santa Clara, which is located within the Northern District of California. (*See* Antonucci Decl. ¶ 2.) Therefore, the action is properly removed to this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

///

**SERVICE ON SUPERIOR COURT**

44. This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of Santa Clara, as required by 28 U.S.C. § 1446(d).

45. In compliance with 28 U.S.C. § 1446(a), true and correct copies of all state court "process, pleadings, and orders" are attached as Exhibits A through B to the Antonucci Declaration.

**WHEREFORE**, Thorntons requests that the above action pending before the Superior Court of the State of California for the County of Santa Clara be removed to the United States District Court for the Northern District of California.

Dated: July 14, 2025

CONSTANGY, BROOKS, SMITH & PROPHETE LLP

By:______________________________

Barbara I. Antonucci
Attorneys for Defendant
THORNTONS LLC