UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER MONTES,<br><br>Plaintiff,<br><br>v.<br><br>THORNTONS LLC,<br><br>Defendant. | Case No. 25-cv-05895-EKL<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: Dkt. No. 28 |

This putative class action alleging California wage-and-hour violations was removed to federal court pursuant to the Class Action Fairness Act ("CAFA"). *See* Notice of Removal, ECF No. 1 ("Notice"). Plaintiff now moves to remand the case to state court on the grounds that removal was untimely, and that Defendant has not met its burden to establish the requisite amount in controversy. Mot. to Remand, ECF No. 28 ("Motion"). Having carefully reviewed the parties' submissions and relevant authority, the Court finds this matter suitable for disposition without oral argument. *See* Civil L.R. 7-1(b). Because removal was timely and Defendant has met its burden to show that more than $5 million is at stake in this case, the motion to remand is DENIED.

## I.    BACKGROUND

Plaintiff was employed by Defendant "as an hourly-paid, nonexempt employee, from approximately July 2024 to approximately December 2024." Compl. ¶ 18, ECF No. 1-4. Plaintiff seeks to represent a class of "current and former hourly-paid or non-exempt employees" who worked for Defendant within the State of California, as well as several subclasses. *Id*. ¶ 13. Plaintiff alleges that Defendant "engaged in a pattern and practice of wage abuse" by "failing to pay [the class] for all regular and/or overtime wages earned and for missed meal periods and rest breaks in violation of California law," among other violations. *Id*. ¶ 25. Plaintiff asserts ten

United States District Court
Northern District of California

causes of action for:  (1) unpaid overtime (Cal. Lab. Code §§ 510, 1198); (2) unpaid meal period premiums (Cal. Lab. Code §§ 226.7, 512(a)); (3) unpaid rest period premiums (Cal. Lab. Code § 226.7); (4) unpaid minimum wages (Cal. Lab. Code §§ 1194, 1197, and 1197.1); (5) failure to timely pay final wages at termination (Cal. Lab. Code §§ 201, 202); (6) failure to timely pay wages during employment (Cal. Lab. Code § 204); (7) non-compliant wage statements (Cal. Lab. Code § 226(a)); (8) failure to keep payroll records (Cal. Lab. Code § 1174(d)); (9) unreimbursed business expenses (Cal. Lab. Code §§ 2800, 2802); and (10) violations of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq*.).  *See* Compl. ¶¶ 53-123.

This case was filed in Santa Clara County Superior Court on March 26, 2025.  *See* ECF No. 1-4.  On April 16, 2025, Defendant was served with the complaint.  Notice ¶ 1.  On July 14, 2025, Defendant removed the case pursuant to CAFA.  *See* Notice.  The notice of removal plausibly alleged the requirements for CAFA jurisdiction:  The case is a class action involving at least 100 class members, minimum diversity of citizenship exists, and the amount in controversy exceeds $5 million.  Notice ¶¶ 4-44.  Defendant estimates that the total amount in controversy is $11,857,355.50 based on certain assumptions discussed below.  Opp. at 10, ECF No. 30.  On August 13, 2025, Plaintiff filed a motion to remand challenging the timeliness of removal and Defendant's amount-in-controversy allegations.

## II.    LEGAL STANDARD

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  Relevant here, CAFA permits removal "if there is minimal diversity between the parties (that is, at least one plaintiff is a citizen of a different State from at least one defendant), if the class contains at least 100 members, and . . . if the amount in controversy exceeds $5 million."  *Perez v. Rose Hills Co.*, 131 F.4th 804, 807 (9th Cir. 2025) (citing 28 U.S.C. §§ 1332(d), 1453(b)).

The amount in controversy is the "amount at stake in the underlying litigation."  *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016)).  It includes "damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorneys' fees awarded

United States District Court
Northern District of California

under fee-shifting statutes or contract." *Id*. The amount in controversy should not be confused with the defendant's "likely or probable liability." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) (quotation omitted). Instead, it "reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019); *see also Jauregui*, 28 F.4th at 994; *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) (The amount in controversy "encompasses all relief a court may grant on that complaint if the plaintiff is victorious.").

The removing party has the burden of establishing federal jurisdiction. *Holcomb v. Bingham Toyota*, 871 F.2d 109, 110 (9th Cir. 1989); *see also Perez*, 131 F.4th at 808. The defendant may initially satisfy this burden by filing a notice of removal that contains "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The notice of removal "need not contain evidentiary submissions" to support the amount in controversy: A "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" is sufficient. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84, 89 (2014).

When "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id*. at 88. The parties may submit evidence including affidavits or declarations or other "summary-judgment-type evidence." *Singer v. State Farm Mut. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). The defendant may also rely on "reasonable assumptions based on the plaintiff's complaint." *Perez*, 131 F.4th at 806; *see also Arias*, 936 F.3d at 922, 925 ("An assumption may be reasonable if it is founded on the allegations of the complaint."). Unlike in other contexts, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee*, 574 U.S. at 89 (citations omitted). Courts should interpret CAFA "expansively." *Ibarra v. Manheim Inv., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

## III.    DISCUSSION

Plaintiff argues that removal was untimely and that Defendant failed to establish the amount in controversy. The Court addresses each argument in turn.

United States District Court
Northern District of California

### A.     Timeliness

The relevant statute identifies two thirty-day periods for removing a case, each triggered by a different event:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> . . . .
>
> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(1), (3).  Thus, a defendant "must generally remove a case within 30 days of receiving the complaint" or, if the complaint does not provide a basis for removal, "within 30 days after receipt of information from which it may first be ascertained that the case" is removable. *Fritsch*, 899 F.3d at 788 (citation modified).  This framework provides defendants with "a fixed and adequate amount of time, after obtaining access to the complaint, to decide whether to remove." *Anderson v. State Farm Mut. Auto. Ins. Co.*, 917 F.3d 1126, 1129 (9th Cir. 2019).  Additionally, a defendant may "remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013).  When the statutory periods have not been triggered, a "CAFA case may be removed at any time." *Id*. at 1126.

In this case, the statutory periods were not triggered.  The complaint did not "affirmatively reveal[] on its face the facts necessary" for CAFA jurisdiction – specifically, that the amount in controversy exceeds $5 million. *Blumberger v. Tilly*, 115 F.4th 1113, 1122 (9th Cir. 2024).  Plaintiff alleges only that the "monetary damages and restitution sought by Plaintiff . . . will be established according to proof at trial," and that the amount in controversy for the named Plaintiff is *less than* $75,000.  Compl. ¶ 1.  Plaintiff alleges that the class includes more than fifty people, *id*. ¶ 15a, but does not allege the amount of damages sought by other class members.  Thus, Defendant could not ascertain from the complaint that more than $5 million is at stake.  *See*

4

*Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (In ascertaining removability, a defendant must "apply a reasonable amount of intelligence," for example by "multiplying figures clearly stated in a complaint," but "need not make extrapolations or engage in guesswork."). Additionally, Plaintiff identifies no "amended pleading, motion, order or other paper" that put Defendant on notice of the amount in controversy, so the second statutory period was not triggered, either. 28 U.S.C. § 1446(b)(3). Because neither statutory period was triggered, Defendant was permitted to remove the case "at any time" based on its own investigation. *Roth*, 720 F.3d at 1123, 1126.

Plaintiff faults Defendant for not investigating removability earlier – even though removal was proper "at any time," and the case was removed less than 90 days after Defendant was served. Plaintiff argues that Defendant's investigation "appears to consist of merely reviewing records it has had in its possession" since the complaint was filed. Mot. at 3. Therefore, Defendant "could have ascertained that this matter was removable under CAFA" within 30 days of receiving the complaint. Sur-reply at 3, ECF No. 38. This argument completely misunderstands the law. The Ninth Circuit has directly and repeatedly rejected the notion that a defendant has a duty to investigate removability based on an indeterminate complaint, or that "materials outside the complaint start the thirty-day clock" for removal. *Kuxhausen*, 707 F.3d at 1141 (holding that defendant "was not obligated to supply information which [plaintiff] had omitted" from the complaint); *see also Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018); *Roth*, 720 F.3d at 1125; *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 696-98 (9th Cir. 2005) (rejecting argument that defendant "should have looked in its files within the first thirty days" if the complaint provided a "clue" as to removability).

In sum, when a plaintiff fails to put the defendant "on notice of removability," the statutory removal periods are not triggered. *Kohrs v. Swift Transp. Co. of Ariz.*, No. 24-4483, 2025 WL 3066302, at *2 (9th Cir. Nov. 3, 2025). The defendant may remove the case based on its own investigation at any time. *Id.*; *see also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014). "By leaving the window for removal open, it forces plaintiffs to assume the costs associated with their own indeterminate pleadings," which is "only fair" because defendants bear

the burden of proof as to removability. *Kuxhausen*, 707 F.3d at 1141; *see also Roth*, 720 F.3d at 1126 (explaining that "plaintiffs are in a position to protect themselves" against delayed removal because they "need only provide to the defendant a document from which removability may be ascertained"). Therefore, the Court finds that removal was timely.[1]

### B.    Amount in Controversy

Plaintiff argues that the amount-in-controversy requirement is not met for three primary reasons. First, Plaintiff argues that the declarations on which Defendant relies are "not competent evidence." Mot. at 5. Second, Plaintiff argues that Defendant made unreasonable assumptions regarding the frequency of the alleged Labor Code violations. *Id*. at 7-10. Third, Plaintiff argues that Defendant made unreasonable assumptions regarding the attorneys' fees at stake in this case. The Court addresses each argument in turn.

### 1.    Sufficiency of the Declarations

To support its amount-in-controversy estimates, Defendant relies on two declarations from Kenneth Cain, an employee who is familiar with Defendant's business and employment records. *See* Cain Decl., ECF No. 1-5; Supp. Cain Decl., ECF No. 34-3. Based on his personal review of company records, Mr. Cain identifies the number of putative class members (1,083 employees), the number of class members who ended their employment during the relevant period (474 former employees), the number of workweeks worked during the relevant period, and class members' average work schedules and hourly rate of pay. Cain Decl. ¶¶ 6-9. Mr. Cain also breaks down the number of shifts worked during the relevant period that exceeded certain hourly thresholds, which would entitle class members to meal breaks, rest breaks, and overtime. Cain Supp. Decl. ¶¶ 3-10.

Plaintiff argues that the declarations are based on a "self-serving" review of business records, and Defendant has not produced any "supporting documents." Mot. at 5-6. Plaintiff cites no precedential authority holding or implying that an otherwise-admissible declaration must be

---

[1] Defendant was not required to provide evidence establishing when its investigation revealed that the case was removable. Sur-reply at 1. Plaintiff cited two cases that imposed such a requirement. *Ali v. Setton Pistachio of Terra Bella, Inc.*, No. 19-cv-00959, 2019 WL 6112772, at *6 (E.D. Cal. Nov. 18, 2019); *Garcia v. Wal-Mart Stores Inc.*, 207 F. Supp. 3d 1114, 1128 (C.D. Cal. 2016). These holdings are inconsistent with the Ninth Circuit's guidance in *Roth*, *Kenny*, and *Kohrs*.

accompanied by corroborating documents.  An amount-in-controversy estimate must be supported by "summary-judgment-type evidence," *Singer*, 116 F.3d at 377, and a declaration "made on personal knowledge" by someone who "is competent to testify on the matters stated" is summary-judgment-type evidence, Fed. R. Civ. P. 56(c).  Moreover, the Ninth Circuit's published decisions have consistently approved the use of affidavits and declarations to establish or contest the amount in controversy for purposes of CAFA removal.  *See, e.g., Ibarra*, 775 F.3d at 1197; *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010).[2]  Based on these authorities, an affidavit or declaration that meets the requirements of Rule 56 may satisfy a defendant's burden of proof, regardless whether the defendant produces other documentary evidence.  Because Mr. Cain is competent to testify to the facts stated in his declarations based on personal knowledge and review of business records, and Plaintiff identifies no true evidentiary defect, this argument fails.

### 2.    The Reasonableness of Defendant's Violation Rate Assumptions

In estimating the amount in controversy, Defendant applies several assumptions regarding the alleged violation rates.  Plaintiff views these assumptions as unreasonable and unsupported.

Although the defendant bears the burden to show that the amount in controversy exceeds $5 million, this burden does not always require the defendant to produce evidence supporting every element of its amount-in-controversy estimate.  "Because '[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability,' a removing defendant need not present evidence of what its ultimate liability will be – in many cases, the defendant presumably expects that figure to be zero." *Perez*, 131 F.4th at 808 (quoting *Lewis*, 627 F.3d at 400).  Instead, the defendant may rely on a "chain of reasoning" that includes reasonable assumptions.  *Id.* (quoting *Arias*, 936 F.3d at 925); *see also Ibarra*, 775 F.3d at 1199.  "What makes an assumption reasonable may depend on which element of the amount-in-

---

[2] Plaintiff cites *Garibay v. Archstone Communities, LLC*, for the proposition that a court may reject an amount-in-controversy estimate that is supported only by a declaration.  539 F. App'x 763, 764 (9th Cir. 2013).  But *Garibay*'s reasoning focused on the defendant's speculation about "key unknown variables" – the Ninth Circuit did not hold that declarations are categorically insufficient.  *See id.*  In any event, "*Garibay* is an unpublished non-binding opinion that other courts in this district have declined to follow in view of conflicting published Ninth Circuit decisions." *Salonga v. Aegis Senior Cmtys., LLC*, No. 22-cv-00525-LB, 2022 WL 1439914, at *7 (N.D. Cal. May 6, 2022) (collecting cases).

United States District Court
Northern District of California

controversy calculation is at issue." *Perez*, 131 F.4th at 808.  For example, in a wage-and-hour case like this one, it "may make sense to expect a defendant to introduce evidence" of "the number of employees in the class" if such information can be determined from the defendant's records.  *Id*. "By contrast, it makes little sense to require a CAFA defendant to introduce evidence of the violation rate . . . because the defendant likely believes that the real rate is zero and thus that the evidence does not exist." *Id*.  Therefore, a defendant "can most readily ascertain the violation rate by looking at the plaintiff's complaint." *Id*.  However, "if a violation rate cannot be justified by the allegations in the compliant, it must be justified by something else." *Id.* at 809.

Here, the Court finds that Defendant's violation rate assumptions are reasonably based on the allegations in the complaint.  For purposes of satisfying the jurisdictional threshold, the Court focuses solely on Defendant's assumptions regarding unpaid overtime and minimum wages, unpaid meal and rest breaks, and waiting time penalties.[3]

Defendant assumed an average of two hours of unpaid overtime and two hours of unpaid minimum wages each week.  Notice ¶¶ 32-34.  Defendant then reduced this estimate based on the number of overtime-eligible shifts worked during the class period, as supported by Mr. Cain's declarations.  Opp. at 8.  Defendant also assumed that, on average, class members were deprived of two meal breaks and two rest breaks per week. *Id*. at 7.  Defendant then reduced this estimate based on the number of shifts worked during the relevant period that were eligible for meal and rest breaks. *Id*.  These assumptions are all reasonable because Plaintiff alleges that Defendant "engaged in a pattern and practice of wage abuse."  Compl. ¶ 25.  A "pattern and practice" implies conduct that is routine and recurring, rather than isolated or infrequent. *See Rubalcaba v. R&L Carriers Shared Servs., L.L.C.*, No. 23-cv-06581, 2024 WL 1772863, at *6-7 (N.D. Cal. Apr. 23, 2024).  Defendant's assumptions boil down to a 40% violation rate, applied solely to shifts during which a violation may have occurred, which is squarely within the range of reasonable assumptions for cases alleging a "pattern and practice." *Id*.

---

[3] Defendant estimates that $6,521,099.40 is at stake for these violations alone.  Opp. at 6-9 ($1,172,898 for meal breaks, $1,269,489.60 for rest breaks, $827,928 for unpaid overtime wages, $1,324,684.80 for unpaid minimum wages, and $1,926,099 for waiting time penalties).

United States District Court
Northern District of California

Defendant also assumes that 100% of employees who were terminated during the statutory period will claim that Defendant failed to timely pay their final wages upon termination. Opp. at 9. Defendant further assumes that every terminated employee will seek to recover the maximum 30-day waiting time penalty, which implies that no terminated employee was fully paid within 30 days after their termination. *Id*. These assumptions are reasonable because if a terminated employee experienced *any* violation alleged in the complaint, that employee was underpaid and thus did not receive all wages due at the time of their termination. It is reasonable to assume that every terminated class member experienced *at least* one of the alleged violations *at least once*, otherwise the terminated employee would not have a claim in the first place. It is also reasonable to apply the full 30-day penalty based on the assumption that all or most of the violations "would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty." *Jauregui*, 28 F.4th at 994. Moreover, Plaintiff claims that class members are entitled to waiting time penalties "up to a thirty (30) day maximum," Compl. ¶ 93, and the amount in controversy is the "*maximum* recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at 927. In sum, all of Defendant's assumptions are reasonable.

Plaintiff argues that Defendant's assumptions are speculative because they are not based on "supporting documentation," and the alleged violations may have occurred less frequently. *See* Mot. at 7-9. This argument misunderstands the defendant's burden. Although the defendant must show that the amount in controversy more likely than not exceeds $5 million, it does not follow that the defendant must show that its assumed violation rate is "more reasonable" than any other possible violation rate. Such a requirement conflates reasonableness with factual accuracy, and it would make the defendant's burden exceedingly difficult in practice when faced with boilerplate complaints like the one in this case. Rather, the defendant can meet its burden if its assumptions are reasonable, meaning that they have "some reasonable ground underlying them." *Ibarra*, 775 F.3d at 1199; *see also Arias*, 936 F.3d at 927; *Perez*, 131 F.4th at 809 ("[A]n assumption is not unreasonable simply because another equally valid assumption may exist."). Of course, a plaintiff is "free to use some more specific phrase" in the complaint to "constrain[] the range of assumptions that [defendant] could reasonably adopt." *Perez*, 131 F.4th at 810. But where the

9

complaint makes nondescript allegations that permit a range of reasonable inferences, a defendant should not be faulted for making one reasonable inference over another – absent some reason to conclude that the selection is unreasonable.

### 3. The Reasonableness of Defendant's Attorneys' Fees Assumption

Finally, Plaintiff argues that Defendant failed to support its estimate regarding the attorneys' fees at stake in this case. Mot. at 10. "[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899 F.3d at 794. As with other aspects of the amount in controversy, Defendant bears the burden of supporting the estimate of attorneys' fees "by a preponderance of the evidence" based on "summary-judgment-type evidence." *Id*. at 795. There is no doubt that attorneys' fees are at stake in this case. *See* Compl. ¶¶ 61, 85, 123. The only issue is whether Defendant's estimate is sufficiently supported.

Defendant reached its estimate by applying a 25% benchmark for attorneys' fees to the other damages estimated for each violation. Defendant argues that the Ninth Circuit has used the 25% benchmark to assess the reasonableness of fee awards in common fund class action settlements. *See* Notice ¶ 40 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees.")). Plaintiff argues that relying on this benchmark is improper for purposes of establishing the amount in controversy for CAFA removal. Mot. at 10.

The Ninth Circuit has left open the possibility of using "a percentage-based" method of estimating fees as part of the amount-in-controversy inquiry. *Fritsch*, 899 F.3d at 796 n.6. However, the Ninth Circuit has rejected a "per se rule" that, "as a matter of law, the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery." *Id*. at 796. Such a rule would improperly "relieve the defendant of its evidentiary burden." *Id.* Moreover, the fee calculation is "limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." *Id.* Thus, a percentage-based fee estimate may be inappropriate if the fee-shifting statute employs the "lodestar method for determining reasonable attorneys' fees." *Id.* The lodestar method fixes a fee award "at the fair market value for the

10

particular action" based on the "number of hours reasonably expended multiplied by the reasonable hourly rate." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-34 (2001). The lodestar figure may be adjusted based on several factors including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Id*. at 1132.

Here, Defendant argues that the 25% benchmark is appropriate and even "conservative" in this case. Opp. at 10. Defendant backs up this argument with alternative bases for estimating the attorneys' fees at stake based on actual fee awards in other complex wage-and-hour class actions, and on the typical hours worked in such cases multiplied by the hourly rates charged by Plaintiff's counsel. *Id*. Plaintiff did not refute these examples. Given that Defendant has met its amount-in-controversy burden even without including attorneys' fees, determining the fees at stake is not necessary here. *Arias*, 936 F.3d at 928 n.5 (recognizing that there is "no need to calculate attorneys' fees" where the "damages in controversy [alone] exceed the jurisdictional threshold"). However, to the extent there is any doubt that the jurisdictional threshold is met, the Court also finds that at least $1,000,000 in attorneys' fees are at stake in this case based on the example cases cited by Defendant.

Defendant has supported its amount-in-controversy estimates with competent evidence and reasonable assumptions tied to the complaint. Even without considering the damages available on several of Plaintiff's claims, the jurisdictional threshold is exceeded. Therefore, Defendant has met its burden to establish CAFA jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is DENIED.

**IT IS SO ORDERED.**

Dated: March 18, 2026

Eumi K. Lee
United States District Judge

United States District Court
Northern District of California

11